UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

CHARLES R. RIEGEL and DONNA S.
RIEGEL,

      Plaintiffs,

  -against-

MEDTRONIC, INC.,

      Defendant.



U.S. DISTRICT COURT
N.D. OF N.Y.
FILED

MAR 18 2002

LAWRENCE K. BAERMAN, CLERK
ALBANY

99-CV-0649
(LEK/RWS)

## MEMORANDUM-DECISION AND ORDER

I.  **BACKGROUND**

A.  Procedural History

Before the Court is Defendant's motion for summary judgment based on federal preemption and for dismissal of Plaintiffs' claim of breach of express warranty for failure to state a claim. Plaintiffs filed a complaint against Defendant in this action on April 29, 1999. The complaint sets forth five causes of action, including negligence, strict liability, breach of express warranty, breach of implied warranty, and loss of consortium. In its amended answer, Defendant sets forth as its fifth affirmative defense the doctrine of federal preemption. This Court issued an order limiting initial discovery to preemption issues. Discovery on federal preemption has concluded and Defendant has based this motion for summary judgment on its preemption defense.

B.  Factual History

In May 1996, Plaintiff Charles Riegel underwent heart treatment as a result of a myocardial infarction. As part of this treatment, an Evergreen Balloon Catheter (the "Catheter"), manufactured

by Defendant, was used for a balloon dilatation of Plaintiff's coronary artery. During the inflation of the Catheter, the Catheter exploded, allegedly causing Plaintiff serious injuries.

## II.   DISCUSSION

### A.   Standard of Review

Federal Rule of Civil Procedure 56 provides that summary judgment is proper where "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-24 (1986). Once the moving party meets its initial burden by demonstrating a right to judgment, the nonmovant must go beyond the allegations in his pleadings and set forth specific facts showing that a genuine issue of material fact exists for trial and that a reasonable jury could return a verdict for the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).[1] Summary judgment must be granted against a plaintiff who fails to demonstrate facts establishing an essential element of his case. Celotex, 477 U.S. at 322-23.

On a motion for summary judgment, all facts must be viewed and all inferences must be drawn "in the light most favorable" to the non-moving party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) (per curiam); Bechhoefer v. United States Dep't of Justice DEA, 203 F.3d 57, 59 (2d Cir. 2000). Bald assertions or conjecture unsupported by evidence are insufficient to overcome a motion for summary judgment. Carey v. Crescenzi, 923 F.2d 18, 21 (2d Cir. 1991).

"[W]hen the defendant provides convincing evidence to explain its conduct and the

---

[1]   "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586 (footnote omitted).

plaintiff's contention consists of purely conclusory allegations of discrimination, the Court may conclude that no material issue of fact exists and it may grant summary judgment in favor of the defendant." Nweke v. Prudential Ins. Co. of Am., 25 F. Supp.2d 203, 214 (S.D.N.Y. 1998) (citing Stern v. Trustees of Columbia Univ., 131 F.3d 305, 312-14 (2d Cir. 1997)).

    B.    <u>Law Governing Medical Devices</u>

        1.    <u>The Medical Device Amendments</u>

The Medical Device Amendments ("MDA") to the Federal Food, Drug and Cosmetic Act ("FFDCA") governs federal approval of medical devices for marketing. The MDA divides medical devices into three categories. Class III medical devices are those used for supporting or sustaining human life, or that are of substantial importance in preventing impairment of human health, or that present a potential unreasonable risk of illness or injury. 21 U.S.C. § 360c(a)(1)(C). The Evergreen Balloon Catheter is classified as a Class III medical device under the MDA.

In order to be marketed in the United States, Class III medical devices must undergo a Premarket Approval Process ("PMA"). The PMA process is a rigorous process involving the submission of extensive, detailed information regarding the safety and effectiveness of the device under review. The manufacturer must submit the following detailed information regarding the particular device:

> (A) full reports of all information, published or known to or which should reasonably be known to the applicant, concerning investigations which have been made to show whether or not such device is safe and effective;
>
> (B) a full statement of the components, ingredients, and properties and of the principle or principles of operation, of such device;
>
> (C) a full description of the methods used in, and the facilities and controls used for, the manufacture, processing, and, when relevant, packing and installation of such

device;

(D) when identifying reference to any performance standard under section 360d of this title which would be applicable to any aspect of such device if it were a class II device, and either adequate information to show that such aspect of such device fully meets such performance standard or adequate information to justify any deviation from such standard;

(E) such samples of such device and of components thereof as the Secretary may reasonably require, except that where the submission of such samples is impracticable or unduly burdensome, the requirement of this subparagraph may be met by the submission of complete information concerning the location of one or more such devices readily available for examination and testing;

(F) specimens of the labeling proposed to be used for such device; and

(G) such other information relevant to the subject matter of the application as the Secretary, with the concurrence of the appropriate panel under section 360c of this title may require.

21 U.S.C. § 360e(c)(1).

Once a manufacturer has submitted this information, the Food and Drug Administration ("FDA") spends approximately 1,200 hours reviewing the application. If it determines that the manufacturer has provided reasonable assurances of the device's safety, it issues an order allowing the device to be marketed as approved. Any changes or modifications to the labeling, manufacturing or design of the device that affects its safety or effectiveness must be approved by the FDA before being implemented. If unapproved changes are implemented, the FDA's approval of the device may be withdrawn. 21 U.S.C. § 360e(e)(1); 21 C.F.R. § 814.80.

There are a few exceptions to the PMA process under which medical devices may be marketed without any direct inquiry into the device's safety and effectiveness. The MDA contains a grandfather provision, allowing devices on the market prior to 1976 to remain on the market until the FDA has had an opportunity to review the device's safety. 21 U.S.C. § 360e(b)(1)(a).

4

Investigational devices are exempted from the PMA process and submitted to an investigational device exemption ("IDE") process, designed to encourage "the discovery and development of useful devices intended for human use." 21 U.S.C. § 360j(g). In addition, devices that are "substantially equivalent" to devices already on the market may avoid the PMA process. 21 U.S.C. § 360e(b)(1)(B). The process by which substantially equivalent devices are marketed is referred to as the "premarket notification" or the "§ 510(k)" process. Under this process, the manufacturer submits limited information about the device and the FDA performs a cursory review of the device, comparing the new device to a preexisting device. While the FDA spends about 1,200 hours on a PMA review, it spends only about 20 hours on a § 510(k) review. See Medtronic v. Lohr, 518 U.S. 470, 478-79 (1996).

> The MDA expressly preempts certain state law requirements in § 360(a), which states that
>
> Except as provided in subsection (b) of this section, no State or political subdivision of a state may establish or continue in effect with respect to a device intended for human use any requirement--
>
> > (1) which is different from, or in addition to, any requirement applicable under this chapter to the device and
> >
> > (2) which relates to the safety or effectiveness of the device or to any other matter included in a requirement applicable to the device under this chapter.

21 U.S.C. § 360(a).

### 2.    Medtronic v. Lohr

In Lohr, a divided Supreme Court considered whether the MDA preempted state-law based tort claims regarding the design, labeling and safety of a pacemaker that had been approved under the MDA pursuant to the § 510(k) process. A majority of the Justices, following parts of an opinion written by Justice Stevens, found that the plaintiff's state law claims were not preempted under the

circumstances.  However, the Court also engaged in an extensive analysis of the MDA and the effect of its preemption provision.  The Court split in its analysis of the MDA, with four Justices joining the majority opinion in its entirety, four Justices joining an opinion by Justice O'Connor, concurring in part and dissenting in part, and Justice Breyer drafting his own concurring opinion in which he sides with the majority's outcome but also expresses agreement with some analysis in the O'Connor opinion.

The Stevens majority analyzed § 360(k) in conjunction with 21 C.F.R. 808.1(d) in order to determine the circumstances under which a state-law requirement would be preempted by the MDA.  First, the majority found that in order for preemption to apply, the FDA must have established "specific counterpart regulations or there [must be] other specific requirements applicable to a particular device under the [MDA]."  Lohr, 518 U.S. at 498.  The majority also found that there must be a specific state requirement "with respect to" medical devices and relating to "the safety and effectiveness of the device or to any other matter included in a requirement applicable to the device."  Id. at 500.  Preemption applies when the state requirements for the device are "different from, or in addition to" the federal requirements for the device.  21 U.S.C. § 360k(a); Id.  A majority of the Supreme Court agreed that these general standards apply to determinations of whether a state-law requirement regarding a medical device is preempted by the MDA.  However, what constitutes a "requirement," under federal and state law, and the situations in which the requirements are considered to conflict were hotly contested issues among the Justices.

The Supreme Court Justices diverged in their opinions as to whether a common law tort action brought under state law can be considered a state requirement for preemption purposes under the MDA.  A plurality of the Justices, led by Justice Stevens, found that "it will be rare indeed" for

6

a state common law cause of action to be preempted, since such a claim does not establish the necessary "substantive requirement for a specific device." 21 C.F.R. § 808.1(d)(6)(ii); Id. at 502-03. However, a majority of the Justices, including the dissenting Justices and Justice Breyer, disagreed. Justice Breyer summarized the views of this majority by stating that "[o]ne can reasonably read the word 'requirement' as including the legal requirements that grow out of the application . . . of a State's tort law." Id. at 503 (Breyer, J., concurring); see also id. at 509 (O'Connor, J., concurring in part and dissenting in part) ("[S]tate common-law damages actions do impose 'requirements' and are therefore pre-empted where such requirements would differ from those imposed by the [MDA]"). State common law actions, therefore, can be considered state "requirements" for purposes of preemption under the MDA. See , e.g., Brooks v. Howmedica, Inc., 273 F.3d 785, 795 (8th Cir. 2001) (analyzing Lohr and noting that a majority of the Justices in that action agreed that state common law claims can be considered state requirements for preemption purposes).

The Lohr decision is generally understood to hold that the MDA preempts common law claims to the extent they conflict with specific federal requirements. See id. In Lohr, the Stevens majority found that there was no conflict between the plaintiff's state common law claims and the federal labeling and manufacturing requirements for the pacemaker at issue, and thus plaintiff's state claims were not preempted by federal law. Lohr, 518 U.S. at 501. The Lohr court reached this decision in large part because the device at issue had been subject only to the minimal, non-safety related § 510(k) process. Section § 510(k) institutes a requirement only that the device at issue be "substantially similar" to a device already on the market. It does not address the safety of the device. Since the Lohr plaintiffs' common law claims challenged the safety of the device at issue,

there was no clear conflict between the plaintiffs' claims and the federal requirements for the device under § 510(k).  Although there was no conflict in the Lohr action itself, the Stevens majority implies that safety-related conflicts may arise in other actions.  Justice Stevens writes that Lohr is "unlike a case in which the Federal Government has weighed the competing interests relevant to a particular requirement . . . and implemented [its] conclusion via a specific mandate on manufacturers and producers."  Id. at 501; see also id. at 493 (noting that the federal requirements in the Lohr case did not cover the safety of the device at issue or "'require' Medtronics' pacemaker to take any particular form for any particular reason," instead the § 510(k) process required Medtronic to comply only with "general standards").

### 3.    Federal Court Decisions Post-Lohr

One issue left unresolved by Lohr is what type of federal rule or regulation constitutes a federal "requirement" for preemption purposes.  While the Supreme Court in Lohr did not specifically consider whether the PMA process imposed specific federal requirements sufficient to preempt state law requirements, a majority of courts following Lohr have found that the PMA process does impose specific federal safety requirements.  See, e.g., Martin v. Medtronic, Inc., 254 F.3d 573, 585 (5th Cir. 2001) (finding that state tort claims relating to design defect, negligence and failure to warn are preempted by the MDA when device was subject to PMA process); Mitchell v. Collagen Corp., 126 F.3d 902, 905 (7th Cir. 1997) (reconsidering prior decision in light of Lohr and finding plaintiff's claims of strict liability, negligence and mislabeling preempted by the MDA when device was subject to PMA process); Brooks v. Howmedica, Inc., 273 F.3d 785, 787 (8th Cir. 2001) (finding plaintiff's claim of mislabeling preempted by the MDA when device was subject to PMA process); Richman v. W.L. Gore & Assocs., 988 F. Supp. 753, 758 (S.D.N.Y. 1997) (finding

8

that tort claims relating to design defect, negligent manufacturing and failure to warn claims are preempted by the MDA when device was subject to PMA process); see also Martin v. Teletronics Pacing Sys., Inc., 105 F.3d 1090,  (6th Cir. 1997) (finding that state law claims were preempted when device was subject to MDA's requirements for investigational devices).  These cases distinguish the finding in Lohr from a situation where the medical device at issue has undergone a lengthy, device-specific process, focused on safety, such as the PMA process.  See Martin v. Teletronics, 105 F.3d at 1096 (distinguishing its decision from that in Lohr because the Lohr court had reached its decision in part based on the fact that "substantial equivalence determinations [under § 510(k)] provide little protection to the public") (citing Lohr, 514 U.S. at 471).

C.    Plaintiffs' Claims

1.    Preemption Under the MDA

The Court reviews Plaintiff's claims with the background of Lohr and cases interpreting Lohr in mind.  Lohr set forth three elements to be considered by courts in determining whether a plaintiff's state law claim is preempted by federal law.  First, there must be a specific federal requirement governing the device at issue.  Second, there must be a specific state requirement relating to the safety of the device.  Third, in order to find preemption, the state law requirement must be different from or impose obligations in addition to the federal requirement.

In this action, Plaintiffs allege that the Catheter was defective, was negligently manufactured and designed and was mislabeled.  Defendant responds that the Catheter was designed, manufactured, labeled and marketed according to the strict requirements imposed by the federal government through the PMA process.  The Defendant submitted extensive information about the

9

safety and effectiveness of its Evergreen Balloon Dilatation Catheter, the type of catheter involved in this action. On August 30, 1994, Defendant received FDA approval through the PMA process for this type of catheter. Defendant submitted further information regarding proposed modifications and changes to the product over the next few years. Defendant then received subsequent approvals from the FDA following the PMA process on April 27, 1995, and April 8, 1996. Defendant's submissions to the FDA contained test data, the results of clinical investigations and design information, including modifications. Defendant also submitted full copies of proposed product labels. All of this information was specific to the Evergreen Balloon Dilatation Catheter. Following PMA approval, Defendant was prohibited from changing the FDA-approved design, labeling, or manufacturing methods without further FDA approval. Defendant has submitted an affidavit from an employee responsible for obtaining PMA approval of the Catheter, testifying as to the extensive safety procedures taken by Defendant in response to the FDA requirements. Attached to his affidavit are approval forms for the Catheter, indicating that in addition to the specific requirements imposed on the Catheter during the PMA process, the Catheter is further subject to federally mandated conditions of approval. Shy Aff., Exs. E-I. Also attached is a full copy of the label approved by the FDA. Shy Aff., Ex. J.

This Court agrees with the reasoning of the majority of courts that have found this extensive approval procedure to be a device-specific federal requirement for preemption purposes. The FDA explicitly approves certain medical devices under the PMA process, requiring the devices to be designed, manufactured and labeled according to specific standards. The FDA's approval under the PMA process imposes standards on the device manufacturer that are fixed and required. Once the FDA approves these specific safety requirements for a device, those requirements constitute a

10

specific federal requirement, as contemplated for preemption purposes under <u>Lohr</u>. Application of state common-law requirements, such as those on which Plaintiffs' strict liability, negligence and breach of implied warranty claims are based, would potentially impose standards different from, or in addition to, these specific federal requirements.

This conclusion is supported by implication in the opinion of the <u>Lohr</u> majority led by Justice Stevens. In his opinion, Stevens points out that the federal requirements involved in <u>Lohr</u> under the § 510(k) process were "not the sort of concerns regarding a specific device . . . that the statute or regulations were designed to protect from potentially contradictory state requirements." <u>Lohr</u>, 514 U.S. at 501. In contrast, the PMA requirements do reflect concerns about particular devices and the PMA process does seem to be designed to protect manufacturers from contradictory state requirements. A finding that a plaintiff's claims are preempted by the MDA protects the manufacturer from being subject to contradictory state requirements imposed by jurors who may not have sufficient information about a particular device or the relevant expertise to make an informed decision. Absent preemption, the manufacturer would be subject not only to the extensive requirements of the PMA process, but also to whatever individual requirements a jury might deem warranted under state law in an individual action. This would be true even if the jury-imposed requirements were different from the standards imposed by the PMA, standards that the manufacturer is not at liberty to modify without federal approval. The manufacturer would thus be placed in a Catch-22 situation, unable to change its device without federal approval, yet subject to unpredictable and potentially conflicting state requirements.

A hypothetical presented by Justice Breyer in <u>Lohr</u> presents a striking example of the potential problems that can arise when a jury verdict imposing a state-law based requirement

11

conflicts with the MDA. <u>Lohr</u>, 514 U.S. at 503 (Breyer, J., concurring). Justice Breyer presents a scenario where the MDA promulgates a regulation requiring a two-inch hearing aid wire and then a jury, persuaded by expert testimony, finds liability based on a defendant's failure to manufacture hearing aids with a one-inch wire. <u>Id.</u> This hypothetical accurately illustrates the type of conflict between state and federal law that could occur if Plaintiffs' tort claims in this action are allowed to go forward. The Catheter's design was specifically approved by the FDA. This design, submitted by Defendant to the FDA during the PMA process, was found to provide reasonable assurances of safety and cannot be changed or modified without FDA approval. A finding by a jury in this case that this design was defective would necessarily impose a standard on Defendant different from that imposed by the FDA. The same reasoning applies to the manufacturing and labeling of the Catheter. These aspects of the device were also submitted to and approved by the FDA in their entirety. Similarly, Plaintiffs' breach of implied warranty claim would also impose inconsistent standards on Defendant. <u>See</u> <u>Mitchell v. Collagen Corp.</u>, 126 F.3d 902, 915 (7th Cir. 1997) (holding that plaintiff's implied warranty claim was preempted because "a state judgment for breach of implied warranty that rested on allegations about standards other than those permitted by the FDA would necessarily interfere with the PMA process"); <u>Richman v. W.L. Gore & Assocs.</u>, 988 F. Supp. 753, 758 (S.D.N.Y. 1997) (finding that a claim of breach of implied warranty imposes safety and effectiveness requirements different from those imposed by the FDA). Allowing the Catheter, which is a device governed by strict FDA standards, to be subjected to state-law tort claims would impose state law requirements on the Defendant that would conflict with the federal requirements already applicable to the device.

Plaintiffs' claims sounding in strict liability, breach of implied warranty, loss of consortium

and (except as discussed below) negligence, are dismissed.[2]

This Court's decision is supported by the Second Circuits pre-Lohr ruling on this issue in Becker v. Optical Radiation Corp., 66 F.3d 18 (2d Cir. 1995). While Becker dealt with a somewhat different factual situation, involving the specific MDA standards applicable to interocular lenses, the reasoning of the Becker court is applicable to this action and has not been invalidated by the Supreme Court's ruling in Lohr. In Becker, the Second Circuit determined that "the common law of New York would impermissibly add requirements in the areas reviewed in the premarket approval process, and thus would impose standards on the [interocular lenses] different from those of the MDA." Id. at 20. While the MDA has set forth more particular requirements for interocular lenses than it has for catheters, the finding of the Becker court remains persuasive on the issue of the extent to which the MDA's PMA process preempts state law tort claims.[3] See Martin v. Medtronic, 254 F.3d 573, 584 (5th Cir. 2001) (finding that the Fifth Circuit's pre-Lohr decision in Stamps v. Collagen Corp., 984 F.2d 1416 (5th Cir. 1993), which held that state-law tort claims were preempted by the MDA, had not been overruled by Lohr, and holding that plaintiff's state-law claims were preempted under the precedent set in Stamps). This Court is not alone in finding that the Becker precedent remains persuasive and viable post-Lohr. In Berish v. Richard's Med. Co.,

---

[2]    Plaintiffs' loss of consortium claim is viable only if Plaintiffs' other claims survive. Since Plaintiffs' other claims are preempted, the loss of consortium claim is dismissed.

[3]    The Court recognizes Plaintiffs' argument that Becker did not consider the issue of what constitutes a specific federal requirement for preemption purposes, and therefore provides an incomplete framework on which to base its decision in this action. As stated above, the Court believes that in this action, the PMA process imposed specific federal requirements on Defendant. The Court therefore finds the reasoning and outcome in Becker persuasive and relevant to its decision in this action.

13

937 F. Supp. 181 (N.D.N.Y. 1996), Judge McAvoy considered the effect of <u>Becker</u> and <u>Lohr</u> on state-law claims against a medical device approved by the FDA pursuant to the IDE process. In <u>Berish</u>, Judge McAvoy refused to reconsider his pre-<u>Lohr</u> decision in the case because "an IDE device is subject to specific regulations that . . . comport with the <u>Lohr</u> standards permitting preemption of state common law tort claims." <u>Id.</u> at 186.

The Court recognizes that the Eleventh Circuit, as well as a few New York State courts, differ in their understanding of preemption requirements post-<u>Lohr</u>. <u>See</u> <u>Goodlin v. Medtronic, Inc.</u>, 167 F.3d 1367 (11th Cir. 1999); <u>Sowell v. Bausch & Lomb, Inc.</u>, 656 N.Y.S.2d 16, 20 (App. Div. 1997) (finding that the "type of ad hoc specificity imposed as part of the individual [PMA] review process is not enough to preempt state law"); <u>Heymach v. Cardiac Pacemakers, Inc.</u> 698 N.Y.S.2d 837, 842 (Sup. Ct. 1999) (finding that state-law tort claims for negligence, breach of warranty and strict liability were not preempted by the MDA). The Plaintiffs urge the Court to adopt the reasoning and conclusions of these courts in this action. However, this Court finds the arguments of these courts less persuasive than those of the majority of courts cited above.

In <u>Goodlin</u>, the Eleventh Circuit determined that the PMA requirements were not in fact promulgated as to any particular device. <u>Goodlin</u>, 167 F.3d at 1376-77. In support of this finding, the <u>Goodlin</u> court noted that since the FDA's conditions of approval were generally applicable to all devices approved during the PMA process and since the FDA issued no specific written regulation regarding the specific devices at issue, the PMA process did not in fact constitute a specific federal requirement as required for preemption under <u>Lohr</u>. <u>Id.</u> The <u>Goodlin</u> court seems to discount the fact that a device subject to the PMA process is approved based on very specific criteria that apply directly to a particular medical device. This Court, unlike the <u>Goodlin</u> court, finds that these

14

specific federal requirements, even though not promulgated as written regulations, should be considered "federal requirements" for purposes of preemption under § 360(k) of the MDA.

### 2. Negligent Manufacturing Claim

While the above cited cases support a finding that most of Plaintiffs' claims are preempted by the federal requirements of the MDA, there is a recognized exception to preemption for claims asserting that a device was negligently manufactured. In Lohr, the Supreme Court agreed that a state requirement is preempted only to the extent that there is a conflict between the state requirement and the federal requirement. See Lohr, 514 U.S. at 498 ("[Section] 360(k) mandates pre-emption only where there is a conflict between a specific state requirement and a federal requirement applicable to the same device") (internal quotations omitted); id. at 509 ("state common-law damages actions . . . are [] pre-empted where such requirements would differ from those imposed by the [FDA]") (O'Connor, J., concurring in part and dissenting in part). In a situation where a plaintiff alleges that a defendant negligently failed to comply with the manufacturing requirements imposed by the FDA, no such conflict or difference exists between the two requirements. The state and federal requirements are coequal in such a situation.

Therefore, to the extent that Plaintiffs are alleging that the Catheter at issue in this action was not manufactured in accordance with the FDA's requirements as set forth in the PMA process, the MDA does not preempt Plaintiffs' claim. See Richman v. W.L. Gore & Assocs., 988 F.3d 753, 757 (S.D.N.Y. 1997); Mitchell v. Collagen Corp., 126 F.3d 902, 913 n.6 (7th Cir. 1997) (noting that to the extent plaintiffs' complaint alleged that defendant was negligent in its adherence to the standards of the PMA, plaintiffs' negligence claim would not be preempted). Defendant argues that

15

Plaintiffs have not set forth facts sufficient to justify allowing a claim of negligent manufacture to go forward under this exception. However, Plaintiffs' first claim, for negligent manufacture, is broad and can reasonably be read to include a claim that Defendant failed to comply with the FDA standards in manufacturing the Catheter. In addition, discovery in this action has thus far been limited to the issue of federal preemption only. Plaintiff has not had the opportunity to obtain information from Defendant that might tend to support its claims under its negligent manufacturing claim. In light of these circumstances, it would be premature to dismiss Plaintiffs' negligent manufacturing claim. To the extent that this claim alleges that Defendant failed to meet the standards set forth in the PMA process, Plaintiffs' claim survives.

3.    Breach of Express Warranty Claim

In addition to the Defendant's motion for summary judgment discussed above, Defendant also moves to dismiss Plaintiffs' breach of express warranty claim pursuant to Fed. Rules of Civ. Proc. 12(b)(6) and 12(c). Because an express warranty is based on an express representation by the Defendant to the Plaintiff, such a claim does not interfere or conflict with the federal requirements imposed through the PMA process. See Mitchell, 126 F.3d at 915 (finding that a breach of express warranty claim is not preempted by the PMA process requirements when it represents an independent representation by the defendant "made as the basis of a bargain between [the parties]").

Defendant erroneously relies on the dismissal standard for summary judgment actions in support of its motion to dismiss Plaintiff's breach of express warranty claims. Defendant therefore argues that Plaintiffs' claim should be dismissed because Plaintiffs have not come forward with facts sufficient to create an issue of fact as to what express warranties Defendant made to them.

Of course, the standard for dismissal of a claim under Rules 12(b)(6) and 12(c) for failure to state a claim and for judgment on the pleadings is much easier to meet than indicated by Defendant. In reviewing the sufficiency of a complaint at the pleading stages, "the issue is not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). Where a motion to dismiss is made prior to any discovery or the filing of an answer, the court is averse to dismiss the complaint, regardless of whether the plaintiff is unlikely to prevail, unless the defendant can demonstrate that plaintiff is unable to prove facts [that] would entitle him to relief. See Wade v. Johnson Controls, Inc., 693 F.2d 19, 22 (2d Cir. 1982). In determining the sufficiency of Plaintiffs' claim for Rules 12(b)(6) and 12(c) purposes, the Court is limited to considering the factual allegations in the complaint, the documents annexed to the complaint as exhibits or relied upon by Plaintiffs, and any matters of which judicial notice may be taken. See Brass v. American Film Technologies, Inc., 987 F.2d 142, 150 (2d Cir. 1993). A complaint should not be dismissed unless it appears that no construction of the facts would permit the plaintiff to prevail. See Hughes v. Rowe, 449 U.S. 5, 10 (1980); Bass v. Jackson, 790 F.2d 260, 262 (2d Cir. 1986).

Under this lenient standard, there is no support for Defendant's argument that Plaintiffs' claim for breach of express warranty should not be allowed to proceed. Plaintiffs have clearly asserted a claim for breach of express warranty in their complaint and there is no indication that this claim is unavailable to Plaintiffs as a matter of law.[4] Plaintiffs' claim for breach of express

---

[4]    In addition, there has been no discovery on this issue yet, so converting Defendant's motion to one for summary judgment is not appropriate on this issue at this point in time.

17

warranty therefore survives.

## **CONCLUSION**

For the reasons stated above, it is hereby:

ORDERED that Defendant's motion for summary judgment is **GRANTED in part and DENIED in part** as described above; and it is further

ORDERED that Defendant's motion to dismiss is **DENIED**; and it is further

ORDERED that the Clerk of the Court shall serve copies of this order by regular mail upon the parties to this action.

IT IS SO ORDERED.

DATED:     March 14, 2002
           Albany, New York

HONORABLE LAWRENCE E. KAHN
UNITED STATES DISTRICT JUDGE